James Kevin DYER *v.* STATE of Arkansas

CR 86-113                                    720 S.W.2d 297

Supreme Court of Arkansas
Opinion delivered December 8, 1986

*John W. Settle*, by: *J. Fred Hart, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant, James K. Dyer, aged 31, was convicted of three charges of kidnaping and

one of rape committed by forcible deviate sexual activity. The jury imposed four life sentences, with the court making the rape sentence run consecutively to the three concurrent kidnaping sentences. The three arguments for reversal question Dyer's competency to stand trial, his capacity to commit the crimes, and the sufficiency of the proof that the children were kidnaped. We affirm.

The prosecutrix testified that as she finished putting her children, both under three, in her car at a Fort Smith bowling park, Dyer came up with an open pocket knife and forced her to drive him out a highway. While threatening her with the knife and once holding it to one child's throat, Dyer showed the prosecutrix pornographic pictures, said he wanted to do those things with her, and forced her to remove her upper clothing as she drove. He made her stop the car and perform oral sex upon him. He then ordered her to get out of the car with him. Two passing motorists saw the prosecutrix almost unclothed and being threatened by Dyer. They stopped, overpowered Dyer, and had another motorist call the police.

Before the trial began the trial judge held a hearing upon defense counsel's oral request that Dyer be found incapable of standing trial. The evidence adduced by both sides was fully sufficient to support the court's refusal to find Dyer unfit for trial. It was shown that he is somewhat mentally retarded, was twice severely burned during childhood, and has a substantial speech defect. His mother could not control him. From the age of 13 Dyer spent most of his time in the care of public institutions, including the Children's Colony and Rogers Hall. He did not learn to read or write. After Dyer's mother and two sisters had testified, Dyer himself testified at some length. Although he showed a lack of knowledge about how long 40 years is, what was going to happen at the trial, what a prison looks like, and other matters, he testified that he remembered the incident and knew he broke the law and did wrong. He evidently understood the many questions and gave coherent answers. The State presented the written findings of Dr. Ragsdill, a psychiatrist who had treated Dyer at the State Hospital. Three days after Dyer was first committed on August 26, 1985, the doctor wrote a letter to the trial judge stating that Dyer was not able to cooperate effectively with an attorney and recommending that the charges be dropped and a treatment

commitment be issued. After further examinations and treatment, Dr. Ragsdill wrote on October 27 that Dyer was able to comprehend the charges and effectively assist his attorney. The doctor found that Dyer had understood the criminality of his conduct and did not lack the capacity to conform his conduct to the requirements of the law. The diagnosis was mild mental retardation and antisocial personality traits. The defense produced no expert testimony.

■ On the issue of Dyer's capacity to commit the offenses, the jury heard much the same testimony during the course of the trial. In addition, Dr. Ragsdill was called as a defense witness and on cross examination repeated the substance of his second letter, affirming Dyer's capacity. The prosecutrix's detailed account of the protracted incident supports the conclusion that Dyer knew exactly what he was doing. Neither of the first two points has merit.

■ On the third point it is argued that the State failed to prove that the two children were kidnaped, because the testimony did not prove either that the children were restrained of their liberty or that any such restraint was for one of the purposes enumerated in the Criminal Code. Ark. Stat. Ann. §§ 41-1701 and -1702 (Repl. 1977). Under the Code, a person commits the offense of kidnaping if without consent he restricts another person so as to interfere substantially with his liberty, with the purpose of "facilitating the commission of any felony." § 41-1702(1)(c). "Restraint without consent" includes restraint of a person under 14 without the consent of a parent. § 41-1701(2). There can be no question about Dyer's having restrained the prosecutrix for the purpose of committing rape, as charged. The jury was instructed on the issues and could readily have found from the testimony that the children were restrained of their liberty by being kept in the car throughout the episode and that the restraint was for the purpose of facilitating the commission of the principal offense. There is no requirement in the statute that the persons being restrained, here the children, must be the intended victims of the particular felony which the restraint facilitates. The proof was sufficient to support the verdicts.

This being a life-imprisonment case, we have examined all the objections brought to our attention and find no prejudicial error.

Affirmed.